UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JEANETTE VOUGHT, MARK SKUTACK, DANEEN SKUTACK, and ROGER E. FROCK, on behalf of themselves and a class of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., and BAC HOME LOANS SERVICING, LP,<br><br>Defendants. | Case No. 10-CV-2052 |

**FINAL ORDER AND JUDGMENT APPROVING SETTLEMENT**

Plaintiffs, Jeanette Vought, Mark Skutack, Daneen Skutack and Roger E. Frock, on behalf of themselves and a class of all other persons similarly situated (collectively "Plaintiffs") and Defendants Banks of America, N.A. and BAC Home Loans Servicing, LP (collectively "Defendants") entered into a Settlement Agreement to fully and finally resolve Plaintiffs' claims against Defendants. (#85-1). On January 30, 2010, the Court entered an Order preliminarily approving the settlement. (#86). On May 24, 2012, Plaintiffs and Defendants each filed a Motion for Final Approval of Settlement. (#99, #101).

On May 31, 2012, the Court held a final fairness hearing. On October 4, 2012, the Court entered an Order denying the motions for final approval of settlement and ordered the parties to further settlement negotiations to be conducted with Magistrate Judge David G. Bernthal. (#120). Judge Bernthal held multiple phone conferences with the parties and on November 19, 2012, the parties participated in mediation with Judge Bernthal. Upon conclusion of the mediation, Judge

Bernthal reported to Judge Michael P. McCuskey that a settlement had been reached on all terms particularly with regard to those issues raised by the Court's October 4th, 2012 order. Judge McCuskey ordered the parties to file a settlement agreement, and he set a status conference for December 19, 2012.

Upon consideration of the documents submitted to this Court to date, oral argument, and the Amendment to Settlement Agreement [132-1] filed on December 18, 2012, the Joint Motion for Final Approval of Settlement [132] is **GRANTED.**

The Court further makes the following findings and rulings:

1.      The Court has jurisdiction over the subject matter of the litigation and over all parties to this litigation, including all members of the Settlement Class as defined below.

2.      The case was commenced in this Court on March 5, 2010 by Plaintiffs Wayne Vought (now deceased) and Jeanette Vought (#1). On April 2, 2010, Plaintiff Roger E. Frock filed a class action complaint against Defendants in the United States District Court in the Southern District of Ohio. On May 18, 2010, Plaintiffs Mark Skutack and Daneen Skutack filed a class action complaint against Defendants in the United States District Court in the Eastern District of Pennsylvania. On July 8, 2010, these three separate actions were consolidated in the present case. (#28).

3.      On July 20, 2010, Plaintiffs filed their First Amended Consolidated Complaint. (#30). On August 19, 2010, Defendants filed a Motion to Dismiss, seeking to dismiss the First Amended Consolidated Complaint. (#37). On September 24, 2010, Judge Bernthal issued a Report and Recommendation and denied Defendants Motion to Dismiss the First Amended Consolidated Complaint. (#50).

4. On January 5, 2011, Plaintiffs filed their Second Amended Consolidated Complaint which alleged six causes of action: (1) breach of contract; (2) breach of contract, third-party beneficiary; (3) unjust enrichment; (4) requests for injunctive relief; (5) violation of the Real Estate Settlement Procedures Act ("RESPA"); and (6) violation of the Illinois Consumer fraud and Deceptive Business Practices Act ("ICFA"). (#63). On January 24, 2011, Defendants filed a Motion to Dismiss, seeking to dismiss the third-party beneficiary breach of contract claim contained in Plaintiffs' Second Amended Consolidated Complaint. (#63). On April 7, 2011, Judge Bernthal issued a Report and Recommendation recommending that Defendants' Motion to Dismiss be granted. (#73).

5. On April 15, 2011, Plaintiffs filed a Motion to Certify a Class, Appoint Class Representatives and Appoint Class Counsel. (#77).

6. On April 29, 2011, the parties filed a Joint Motion to Stay in order to conduct settlement negotiations. (#81). On May 3, 2011, this Court granted the parties Motion to Stay. (#81).

7. The parties participated in two separate, day-long mediation sessions. The first session was held on July 19, 2011, before Richard P. Sher. The second session was held on October 6, 2011, with Judge Donald P. O'Connell, (Ret.). During the second mediation, the parties reached a settlement agreement.

8. On January 5, 2012, the parties entered into a written settlement agreement. (#85-1). On January 30, 2012, this Court entered a Preliminary Approval Order certifying classes, appointing class counsel, and preliminarily approving the settlement agreement. (#86). In the Order, the Court: (1) granted preliminary approval of the proposed settlement after finding that it was within the applicable range of fairness and reasonableness; (2) conditionally certified a Class

and Subclass for settlement purposes; (3) appointed class counsel for the Class and Subclass; (4) approved the proposed form of mailed notice to the Class and Subclass, to be directed to the last known address of each Class and Subclass member as shown in Defendant's records, by March 15, 2012; (5) set a July 17, 2012 deadline for claim forms to be postmarked; and (6) set a May 11, 2012 deadline for objections or requests for exclusions from the proposed settlement.

9. On May 24, 2012, Plaintiffs and Defendants each filed a Motion for Final Approval of Settlement. (#99, #101). On May 31, 2012, the Court held a final fairness hearing. On October 4, 2012, the Court entered an Order denying the motions for final approval of settlement and ordered the parties to further mediation with Judge David G. Bernthal. (#120).

10. On November 19, 2012, the parties participated in further mediation with Judge Bernthal. Upon conclusion of the mediation, Judge Bernthal reported to Judge Michael P. McCuskey that a settlement had been reached.

11. On December 18, 2012, the parties entered into an Amendment to Settlement Agreement. (#132-1). In addition to the terms and conditions contained in the Settlement Agreement entered into on January 5, 2012 (#85-1), the Amendment to Settlement Agreement provides for additional payments to the class members and for notice of the revised settlement terms to be provided to opt outs and objectors.

12. On December 18, 2012, the parties filed a Joint Motion for Final Approval of Settlement. (#132).

13. This Final Order and Judgment Approving Settlement incorporates by reference the definitions in the Settlement Agreement as revised by the Amendment to Settlement Agreement, and terms used herein shall have the same meanings as set forth in the Settlement Agreement as revised by the Amendment to Settlement Agreement. The Settlement Agreement

as revised by the Amendment to Settlement Agreement is adopted by the Court and made part of this Order as if set out in full herein.

14. The Settlement Class and Settlement Subclass this Court provisionally certified in the Preliminary Approval Order is hereby certified as final. The Settlement Class and Settlement Subclass are defined as follows:

> <u>Settlement Class</u>: All individuals who have, or did have, a residential mortgage loan for real property situated in the United States of America whose mortgage account, previously serviced by Taylor, Bean and Whitaker, was assigned or transferred to BAC Home Loans Servicing, L.P., pursuant to a U.S. Department of Housing and Urban Development Government National Mortgage Association Single Family Master Subservicer agreement, in August 2009, where the mortgage payment(s) were: (a) paid to and received by Taylor, Bean and Whitaker; (b) on or about August 1, 2009; (c) in an amount equal to or greater than the minimum monthly contractual amount for the month; and (d) were not credited by Defendant in 2009.
>
> <u>Settlement Subclass</u>: All individuals who have, or did have, a residential mortgage loan for real property situated in the United States of America whose mortgage account, previously serviced by Taylor, Bean and Whitaker, was assigned or transferred to BAC Home Loans Servicing, L.P., pursuant to a U.S. Department of Housing and Urban Development Government National Mortgage Association Single Family Master Subservicer agreement in August 2009, where the mortgage payment(s) were: (a) paid to and received by Taylor, Bean and Whitaker; (b) on or about August 1, 2009; (c) in an amount equal to or greater than the minimum monthly contractual amount for the month; and (d) were not credited by Defendant in 2009, but were subsequently credited with payments.

15. Pursuant to Federal Rule of Civil Procedure 23, and for purposes of settlement only, the Court makes the following findings of fact and conclusions of law:

> (a) The Settlement Class and Settlement Subclass are sufficiently definite;
>
> (b) The Settlement Class and Settlement Subclass are so numerous that joinder of all members of the Settlement Class and Settlement Subclass is impracticable;
>
> (c) There are questions of law and/or fact common within the Settlement Class and Settlement Subclass;

(d) Plaintiffs' claims are typical of the claims of the members of the Settlement Class and Settlement Subclass;

(e) Plaintiffs and their counsel have and will fairly and adequately represent and protect the interests of the Settlement Class and Settlement Subclass;

(f) Plaintiffs' interests do not conflict with the interests of the Settlement Class and Settlement Subclass in the maintenance of this action;

(g) The questions of law and/or fact common to the Settlement Class and Settlement Subclass predominate over the questions affecting only individual members of the Settlement Class and Settlement Subclass; and

(h) Certification of the Settlement Class and Settlement Subclass is superior to other available methods for the fair and efficient adjudication of this controversy.

16. Pursuant to Federal Rule of Civil Procedure 23(e), this Court hereby approves the settlement set forth in the Settlement Agreement as revised by the Amendment to Settlement Agreement and finds that said Settlement Agreement as revised by the Amendment to Settlement Agreement is, in all respects, fair, reasonable and adequate. In reaching this conclusion, the Court has considered all of the same factors that it duly considered in its previous Order analyzing an earlier proposed settlement of this action. (#120).

17. This action is properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23, and the Class Representatives and Class Counsel fairly and adequately have and will represent the interests of the Settlement Class and Settlement Subclass.

18. As a result of the Settlement Agreement as revised by the Amendment to Settlement Agreement, all Class Members receive significant benefits in the form of both equitable and monetary relief. Plaintiffs estimate that to date Class Member accounts' have been

credited with payments totaling $16,880,000, with approximately 200 accounts yet to be credited due to loan modification or foreclosure issues. In addition, Plaintiffs estimate that $2,230,000 in late charges will be waived or refunded to Class Members. Further, as part of the Court ordered mediation, Defendants have agreed to pay an amount equal to the maximum statutory penalty allowed by the RESPA statute, $500,000, to Class Members, with no part of it reverting to the Defendants. Based upon these totals, Plaintiffs estimate the total value of the settlement to be approximately $19,610,000. The Court adopts this estimate.

19.     Regarding the equitable relief, all Class Members who were not properly credited with missing payments will: (1) have those payments credited; (2) have any associated late fees reversed, or, if the late fees had already been paid, receive a refund for any late fees; (3) receive an IRS Form 1098 for the tax year in which the payment was applied issued by Defendant and reflecting the interest portion of the missed payments; and (4) receive credit correction services as detailed in Paragraph 20 provided by Defendant.

20.     With respect to the credit correction services, Defendant is specifically required to: (1) issue an informational job aid to assist customer service staff in responding to inquiries regarding missed payment issues; (2) provide a letter to each class member describing in neutral terms the missing payment issue and the crediting of the account; (3) provide credit information regarding class member's accounts to credit reporting bureaus, subject to confirmation that the reporting will contain no negative information regarding the missing payments; and (4) identify one central toll-free number to be utilized in all notices and by class members for communications with regard to any missing payment issues.

21.     Regarding the monetary relief, up to three forms of monetary relief are available as part of the Settlement Agreement as revised by the Amendment to Settlement Agreement to

Class Members who have previously submitted a claim form in compliance with the Court's prior Preliminary Approval Order. (# 85-2). Class Members who qualify for all three types of relief and submit a verified claim form are entitled to recover up to $150.00 as follows:

> (1) Fifty Dollars ($50.00) to class members who submit a claim form reflecting: (a) that the class member paid TBW a payment greater than or equal to a fully contractual monthly mortgage on or after August 1, 2009; (b) that their mortgage account was not credited by Defendants in 2009; (c) that they made a written request to Defendants to credit their accounts for the missing payment; and (d) that as of December 1, 2011, the missing payment had not been credited by Defendants.
>
> (2) Seventy-five Dollars ($75.00) to class members who submit a claim form identifying circumstances under which Defendants' credit reporting as to the missed payment resulted in an adverse effect on class members' ability to obtain, extend or continue credit. Class members must identify the lender and type of loan or credit vehicle involved.
>
> (3) Twenty-five Dollars ($25.00) to class members who submit a claim form and attach a copy of their 2009 Schedule A to IRS Form 1040 reflecting that they itemized deductions in 2009.

22. In addition, under the Settlement Agreement as revised by the Amendment to Settlement Agreement, Defendants are now committed to pay at least $500,000 to the Class with no portion of that amount reverting to Defendant. These funds, after subtracting the amount that has been properly claimed by class members who submitted claim forms pursuant to Paragraph 21(1) above, will be distributed *pro rata* among all Class Members. The payments will occur automatically and no action is required to be taken by any class member. This satisfies the Court's prior concerns that money was reverting back to the Defendants.

23. The Court holds that notice provisions set forth under the Class Action Fairness Act, 28 U.S.C. § 1715, were complied with in this case. No communications from regulators have been received by the parties or this Court in response to that notice. The parties also have provided notice in a manner consistent with the Order granting the parties' Motion for

Preliminary Approval of Class Action Settlement and as set forth in the Settlement Agreement as revised by the Amendment to Settlement Agreement. The notice, as implemented, met the requirements of Rule 23 and due process and was the best notice practicable under the circumstances. The notice was reasonably calculated, under the circumstances, to apprise members of the Settlement Class and Settlement Subclass of the pendency of the action, the terms of the Settlement, and their right to appear, object to, or exclude themselves from the Settlement. Further, the notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice. Tilghman & Co., P.C. was retained to assist in disseminating Notice in accordance with the terms of the settlement agreement and the Court's order granting the parties' motion for preliminary approval of class action settlement. It is apparent from the Affidavit of L. Stephen Tilghman (#103-2) that the Notice was properly implemented and effective. The Claims Administrator mailed notices, via First Class Mail, to 14,868 class members at their last known addresses. Out of the total 14,868 mailings, 2,815 recipients were construed to be members of the Class and 12,049 recipients were considered to be members of the Subclass. Notice of the proposed settlement was received by 14,798 out of 14,868 total class members, which is 99.56% of the class. The deadline for submission of claim forms was July 17, 2012.

24.    Additionally, twenty (20) members of the settlement class initially opted out of the settlement, totaling 0.13% of the class. Pursuant to the Settlement Agreement as revised by the Amendment to Settlement Agreement, this Court ordered the Defendants, through the Settlement Administrator, to provide notice of the Amendment to Settlement Agreement to: (1) those persons who objected to the prior proposed settlement and (2) those persons who timely opted out of the original settlement, to afford them an additional opportunity to rescind their opt

out and receive the benefits provided by the Settlement Agreement as revised by the Amendment to Settlement Agreement. The Settlement Administrator received zero (0) responses from persons desiring to rescind their opt out pursuant to the terms of the Revised Settlement Agreement. The persons identified on Exhibit 1 have timely and validly requested exclusion from the Settlement Class and did not rescind their opt out; therefore, they are excluded. Those persons not included in or bound by this Order may individually pursue claims (if any) against Defendants.

25. The Court finds that no further or additional notice is required, except to the objectors and opt outs as described above. As outlined above, the notice undertaken by the parties satisfied all statutory, Rule 23 and due process requirements. Here, each Class Member will receive an additional benefit in the form of a payment representing a pro rata share of the remaining RESPA funds. No claim form is required and the payment will be made both to those that made a prior written claim and those that originally opted not to make a claim. Given these facts the Court concludes that this enhancement of the settlement does not require new notice to be issued. *See, e.g., Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 56 (Cal. App. 2008) ("We are satisfied that these changes improved the settlement, and that no notice of them was therefore required.") (citing *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1111 (10th Cir.2001) (no notice required of change expanding rights of class members); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) (an additional opt-out period is not required with every shift in the marginal attractiveness of the settlement)).

26. The Court received three written objections to the January 5, 2012 Settlement Agreement: (1) Chris D. Risener and LaCrista A. Bagley; (2) Kenneth and Gayla Conway; and (3) Paula Randall. The Court notes that Paula Randall opted out of the settlement and is included

in the list of individuals identified in Exhibit 1. In addition, counsel for Chris D. Risener and LaCrista A. Bagley appeared before this Court on December 19, 2012 and made an oral motion to opt his clients out of the Settlement, which motion was approved. (Minute Entry of 12/19/12). Accordingly, Chris D. Risener and LaCrista A. Bagley are also listed in Exhibit 1. Upon careful review of the Settlement Agreement as revised by the Amendment to Settlement Agreement, which provides additional benefits to Class Members that were not contained in the original Settlement Agreement, and consideration of all objections, the Court has determined that none of the objections warrants disapproval of the settlement and hereby overrules all objections in this case. After consideration of all relevant factors, *see, e.g., Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006), including *inter alia*, (a) the strength of plaintiffs' case compared to the amount of defendants' settlement offer; (b) an assessment of the likely complexity, length and expense of the litigation; (c) an evaluation of the amount of opposition to settlement among affected parties; (d) the opinion of competent counsel; and (e) the stage of the proceedings and the amount of discovery completed at the time of settlement, the Court finds that the Settlement Agreement as revised by the Amendment to Settlement Agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and taken as a whole is fair, reasonable and adequate to all concerned.

27. Based on the declarations submitted by Class Counsel describing their qualifications, as well as the Court's observations during hearings held in this case, the Court finds that Class Counsel is well-qualified and competent in the area of complex litigation and nationwide class actions.

28. Based upon the duration of this litigation and the Class Representatives' participation, the Court finds the compensation requested by the Class Representatives, Jeanette

Vought, Mark and Daneen Skutack, and Roger E. Frock is reasonable. The Court awards Jeanette Vought $4,000 as compensation for being a Class Representative. The Court awards Roger E. Frock $4,000 as compensation for being a Class Representative. The Court awards Mark and Daneen Skutack $4,000 as compensation for being a Class Representative.

29. In addressing Class Counsels' application for an award of attorneys' fees, the Court has considered the affidavit and declarations of Class Counsel, and other submissions regarding that request. The Court has carefully considered relevant factors in determining the reasonableness of the fee, including the following: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to properly perform the legal services; (2) the likelihood that acceptance of the particular employment will preclude other employment by the lawyers or their law firms; (3) the fee customarily charged for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

30. The Court finds the attorneys' fees are fair and reasonable, given the results achieved, the complexities of the case and skill required of counsel, the contingent nature of the fee, the reaction of the Class, the nature of the RESPA fee shifting statute and the fact that the attorneys' fees are being paid by Defendants separate and apart from any relief to the Class Members. In addition, the Court finds that the hourly rates charged by Class Counsel are within the realm of prevailing market rates in the relevant community. Accordingly, under a lodestar analysis, the Court hereby grants the request and awards Class Counsel attorneys' fees and costs in the amount of $2,000,000.00.

31. The Court acknowledges and is mindful of the fact that in its prior opinion it was critical of the attorneys' fee award. That criticism notwithstanding, the Court is satisfied that the fee award requested is warranted in this case. As an initial matter, the injunctive relief originally sought by Class Counsel for the benefit of the Class has been received. The total value of this has been estimated by Plaintiffs to be $19,610,000. In addition, Defendants are now paying the maximum amount that they could be required to pay under the RESPA statute. And because the RESPA statute contains a fee shifting provision, this Court must calculate reasonable fees based on the "lodestar" method. *See Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012) (noting that a reasonable lodestar calculation should be adjusted only "(i)n limited circumstances."); *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 643 (7th Cir. 2011) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989) for the proposition that a properly calculated fee pursuant to the lodestar method, "by definition will represent the reasonable worth of the services rendered in vindication of a plaintiff's civil rights claim."). Here, based on the Declaration of Eric D. Holland filed on May 24, 2012 (#103-1), the total amount of fees and expenses reasonably incurred by Class Counsel through that date was $2,607,591.78. That number has undoubtedly increased rather substantially as a result of Class Counsels' participation in the final approval hearing, further negotiations, a full day settlement conference and drafting of the various documents filed in support of the Settlement Agreement as revised by the Amendment to Settlement Agreement. After examining the submissions the Court finds these fees and expenses to be reasonable and necessary for the prosecution of the case. The fact that the fee award is arguably disproportionally larger than the monetary recovery to the class (if you disregard the substantial injunctive relief received by the class) does not alter the Court's opinion as to the reasonableness of the attorneys' fees. As recently noted by the Second Circuit, "(e)specially for

claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes; assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Millea v. Metro-North Railroad Company,* 658 F.3d 154, 169 (2d Cir. 2011). The Court follows the sound reasoning of the Second Circuit and approves the fee.

32.     As of the Effective Date of the Settlement Agreement as revised by the Amendment to Settlement Agreement, each Class Representative and each Class Member, and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and all persons acting for or on their behalf, shall be deemed to have, and by operation of this Final Approval Order shall have, fully, finally and forever released the Released Parties from all Released Claims, as more fully set forth in the Settlement Agreement as revised by the Amendment to Settlement Agreement.

33.     The Court hereby dismisses with prejudice all Released Claims as outlined in the Settlement Agreement as revised by the Amendment to Settlement Agreement. Accordingly, the Class Representatives and Class Members are barred from instituting or prosecuting, in any capacity, an action or proceeding against Defendants that asserts a claim released in the Settlement Agreement as revised by the Amendment to Settlement Agreement. Only those individuals identified in Exhibit 1 hereto requested exclusion from the Class as of the deadline for opting out and did not rescind their opt-out request. These persons so identified shall not share in the benefits of the Settlement. The Court dismisses without prejudice the claims of such persons who have properly and timely excluded themselves in full accordance with the

procedures set forth in the Settlement Agreement as revised by the Amendment to Settlement Agreement.

34.     Neither the Settlement Agreement as revised by the Amendment to Settlement Agreement nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement as revised by the Amendment to Settlement Agreement or the Settlement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of Defendants or any of them, or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Defendants or any of them in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Defendants may file the Settlement Agreement as revised by the Amendment to Settlement Agreement and/or the Judgment from this action in any other action that may be brought against it arising out of the claims asserted or which could have been asserted in this action in order to support a defense or counterclaim based on any applicable principles or *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

35.     Without affecting finality of this Order, the Court retains exclusive jurisdiction over the parties, including all members of the Class and Subclass defined above, and the execution, consummation, administration, and enforcement of the terms of the Settlement Agreement as revised by the Amendment to Settlement Agreement and the award of attorneys' fees and incentive awards.

36.     There being no just reason for delay, the Clerk is directed to enter this Final Order and Judgment forthwith. This Action, including all individual claims and Class claims resolved

by it, with the exclusion of those individuals identified in Exhibit 1, is hereby dismissed with prejudice against Defendants and all Class members, without fees or costs except as otherwise provided by this Court in this Final Order and Judgment.

IT IS THEREFORE ORDERED THAT:

(1) The Joint Motion for Settlement Approval [132] is GRANTED.

(2) This case is terminated.

ENTERED this 23rd day of January, 2013

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY
U. S. DISTRICT JUDGE

# EXHIBIT 1

**Borrower / Co-Borrower Class Opt Outs**

Michael D. and April Murillo

Albert Melvin

Stephen V. and Keri Richardson

Paula Randall

Stephen and Vichelle Naugle

Stanley B. Gilliam

Douglas and Janice Price

Francisco Solorzano

James DePoppe

John and Heather Long

Todd Blackburn

Ann M. Driscoll

Robert McAnarney

Michael H. Leaf

Sherry M. and Rodney Fulk

Danny Todd and Janna Metzger

Elizabeth and James Boughton

Melvyn and Marian Montano

Robert and Carol Wright

Earl and Nell Putnam

Dale L. and Judi Drewery

Chris D. Risener and LaChrista (Bagley) Risener